GEORGE C. PETERS et al., Appellants, v. JOHN F. DELAPLAINE et al., Respondents.

A specific performance of a contract for the sale of lands will not be granted where the vendee has delayed seventeen years after the refusal of the vendor to perform before seeking to enforce it, and where meanwhile the situation of the parties and the condition and value of the property has greatly changed.

The statute of limitations, by which an action for equitable relief is absolutely barred by lapse of time, does not affect the general doctrines of equity or the principles upon which relief is granted in particular cases, and although an action for specific performance be brought within the statutory limit as to time, the question still remains, and must be decided

in each action, whether under the peculiar circumstances equity and good conscience require a specific performance or will leave the party to his remedy at law. (*Learned* v. *Smith*, 44 N. Y., 618, explained.)

A right of action for specific performance accrues upon the refusal of the vendor to perform as required by the terms of the contract, and the fact that the vendor could not then give a perfect title does not affect the cause of action or the extent of the relief, but operates merely to modify the form of the decree substituting compensation or indemnity in part for a full specific performance. It is no answer, therefore, to a claim that the statute of limitations then commenced running, that the form of relief the vendee could then have had was not precisely the same as that subsequently attainable.

While the framers of the Code abolished the distinction in actions and the forms of actions, they recognized the different classes of rights, and the clear distinction between legal and equitable causes of action and the different remedies. And the legislature, in adopting that portion of the Code limiting the time for the commencement of actions, intended a simple revision, not a change in the prior statutes. Where an action for relief is spoken of in sections 91 and 97, reference is had to actions which before the Code were only cognizable in courts of equity.

An action for the specific performance of a contract under seal is not an action upon a sealed instrument within the meaning of section 90. The contract gives no absolute right to a specific performance, and the exercise of this branch of equity jurisdiction is not a matter of right but of discretion, and the relief sought is granted or refused according to the circumstances of each case, irrespective of the former character of the contract or the foundation of the liability. But such an action, whether it grows out of a contract under seal, a written instrument not under seal, or a parol contract, is included in section 97, and is barred at the expiration of ten years from the time the cause of action accrued.

(Argued April 3, 1872 ; decided May 21, 1872.)

APPEAL from judgment of the General Term of the Supreme Court in the first judicial department, affirming a judgment in favor of defendants entered upon the decision of the court upon trial without a jury.

The action was to enforce specific performance of a contract for the sale of land in the city of New York. It was brought by the vendee's representatives against the vendor's representatives. The contract was dated March 1, 1852. It provided for complete performance on both sides at the office of John F. Delaplaine, the vendor, on May 1, 1852, between the hours of ten A. M. and three P. M. He was to give "a satis-

factory title free of incumbrances." The plaintiffs gave *prima facie* evidence that John R. Peters, the vendee, tendered complete performance on his part at the time and place specified, and that Mr. Delaplaine, then and there, failed to perform on his part.

The action was commenced March 25, 1869. The contract was under seal. Mr. Delaplaine, the vendor, was a married man, and, at the time of refusing to perform, he assigned as a reason that his wife would not "sign the deed." This lady died shortly after July 17, 1866, and the plaintiffs contended that their cause of action arose at that time.

John F. Delaplaine, the vendor, died about June 3, 1854; John R. Peters, the vendee, died April 24, 1858.

The contract price of the property agreed to be sold was $30,000. Its value had become enhanced to more than ten times that amount.

The vendor, or his representatives, continued at all times in possession, and in receipt of the rents and profits, without recognizing any right in or claim of the vendee or his representatives.

The court decided that the equitable remedy for specific performance, not having been sued for within ten years, was barred by the statute of limitations. The complaint was, therefore, dismissed, the plaintiffs excepting.

*Edgar S. Van Winkle* for the appellants. This is an action on a sealed instrument, and is not barred by the statute until twenty years after the cause of action accrued. (Code of 1849, §§ 69, 73, 74, 90, 97, 120; 2 R. S., 291; *Mayor, etc.,* v. *Colgate,* 12 N. Y., 140; *Borst* v. *Corey,* 15 id., 505; *Balch* v. *Onion,* 4 Cush., 559; *Thayer* v. *Mann,* 19 Pick., 535; *Elkin* v. *Edwards,* 8 Geo., 325; *Heyer* v. *Pruyn,* 7 Paige, 465.) The cause of action did not arise until after Mrs. Delaplaine's death, as prior to that it could not have been maintained. (*In the Matter of Hunter,* 1 Ed. Ch., 6; *Downs* v. *Collins,* 6 Hare, 437; *Mills* v. *Van Voorhis,* 23 Barb.,

125; *Morss* v. *Elmendorf*, 11 Paige, 277; *Jones* v. *Gardner*, 10 Johns., 267; *Knowles* v. *McComly*, 10 Paige, 342; 1 Sugd. Vend. & P., 330.)

*Charles O'Conor* for the respondents. Ten years having elapsed after the alleged breach, the action was barred. (*Bruce* v. *Tilson*, 25 N. Y., 194; 30 Barb., 178; *Peabody* v. *Roberts*, 47 id., 103; 2 R. S., 301, §§ 51, 52; *Roberts* v. *Sykes*, 8 Abb., 350; 30 Barb., 178; *Taylor* v. *Delancey*, 2 Caine's Cases, 151; *Goodell* v. *Jackson*, 20 John., 722; *Howard* v. *Thompson*, 21 Wend., 319; *Douglass* v. *Howland*, 24 Wend., 47; *Theriah* v. *Hart*, 2 Hill, 381.) The right of action accrued May 1, 1852. (*Woodbury* v. *Luddy*, 14 Allen, 2, 6, 7; *Davis* v. *Parker*, id., 98, 104; *Harsha* v. *Reid*, 45 N. Y., 419.) Where such circumstances attend the case, and so long a period as seventeen years has elapsed without any steps being taken by vendor or vendee, no court of equity would enforce specific performance against either. (*McWilliams* v. *Long*, 32 Barb., 194; *Bruce* v. *Tilson*, 25 N. Y., 202, and authorities there cited; *Olcott* v. *Wood*, 4 Kern., 40; Story's Eq. Jur., §§ 742, 776.)

CHURCH, Ch. J. If the statute of limitations does not constitute an absolute bar to the action, no court would ever decree a specific performance of the contract at this late day, and under the circumstances of the case. The action was commenced seventeen years after the making of the agreement and the refusal of the vendor to perform the same. In the mean time both of the original contracting parties had died, the one eleven and the other fifteen years before bringing the action.

The property has increased in value from thirty thousand to three hundred thousand dollars, and during all the time the vendor and those who have from time to time succeeded to his estate in the premises, have received large sums for rents, issues and profits, and have necessarily paid the taxes and assessments upon the property, and a specific performance

of the contract will necessarily require a statement of an account with the several parties in respect of the receipts and expenditures connected with the premises. The title to the premies has become vested in the defendants, some claiming under the will of the original vendor either as trustees or in their own rights, and others under the will of a son of the vendor, taking a part of the property by devise from his father, and who survived his father some twelve years. Portions of the estate are held under various trusts administered by trustees appointed by the court.

Among the defendants and parties in interest is one lunatic, several married women and infants, one benevolent institution claiming under the will of Isaac C. Delaplaine, and the trustees of the different trusts and the personal representatives of one of the decedents named. It would not be easy upon adjudging a specific performance of the contract before us to adjust all the equities of the different parties as between themselves, and it is quite certain that the present owners of the property and parties in interest could not be put in the same position which they might have occupied under the wills of their respective testators, and in the distribution of the several estates, had the purchaser been "ready, desirous, prompt and eager" to perform the contract and assert his rights. The title and the interests of the claimants are complicated, and a specific performance would lead to a great perplexity and inconvenience, which would have been avoided by a prompt assertion and prosecution of the claim to a specific performance by the purchaser.

The property has greatly changed in value if not in condition, and the title has, by divers conveyances and devises, passed into other hands, and the estates and interests of the owners are complicated so that a specific performance cannot be awarded without great danger of doing injustice. In other words, the situation of the parties and the condition and value of the property have so greatly changed during the time that elapsed between the making of the contract and the bringing of the action, that it is not a case for a specific

performance within the rules governing courts of equity in administering this branch of their jurisdiction.

The granting or withholding specific performance is within the discretion of the court, and it will not be granted when it would be against conscience and justice to do so. (Story Eq. Jur., §§ 161, 742, 776 and cases cited; *Seymour* v. *Delancey*, 6 J. C. R., 222; *King* v. *Hamilton*, 4 Peters, 311.) The statute of limitations, by which an action for equitable relief is absolutely barred by the lapse of time, does not affect the general doctrines of equity or the principles upon which relief is granted in particular cases, or a particular class of cases.

The time within which actions may be brought for specific performance of contracts has not been extended by implication by the statutes prescribing a time within which the action must in all cases be brought. The question still remains, and must be decided in each action, although brought within the statutory limit as to time, whether under the peculiar circumstances equity and good conscience require that the contract shall be specifically performed or whether the party should be left to his remedy at law for the non-performance.

We do not understand the remarks of the learned judge, in *Leaird* v. *Smith* (44 N. Y., 618), as in conflict with this view.

In that case the delay was fully excused, and the remark referred to was casually made and merely to the effect that slumbering upon their respective rights by the contracting parties would terminate the contract only by such an efflux of time as would create a bar by the statute of limitations. This was literally true; the contract would not be terminated, but it does not follow, and it is not intended to be suggested, that because the contract was in force, it might in all cases be enforced and specifically performed in equity.

If specific performance were a strict legal right it would be otherwise. The plaintiffs, by their own showing, have not made a case for the equitable relief claimed; but passing this question without further consideration, the statute of limitations interposes an insuperable bar to the action.

The breach of the contract and the cause of action resulting from such breach were complete on the first of May, 1852, when the purchaser tendered performance on his part and demanded performance on the part of the seller, and the latter refused.

It is not denied that from that time there was a perfect cause of action at law for the recovery of damages, and that the statute then commenced running against that cause of action, but it is sought to distinguish the equitable action for the conveyance of the property from the legal action, upon the ground that the seller was not then capable of fully performing the contract by giving a perfect title to the property, and that the title he could have given would have been subject to the contingent right of dower of his wife, then living, and who survived him many years. The cause of action accrued whenever the purchaser could have filed a bill for the relief sought in this action. (*Bruce* v. *Tilson*, 25 N. Y., 194.) The relief sought is a specific performance of the contract, and the purchaser was entitled to that on the first day of May, 1852; and that the seller could not then give a perfect title did not affect the cause of action or the character or extent of the relief which the court would grant, but, in case the disability continued, would merely have operated to modify the form of the decree, by substituting, in part compensation or indemnity for a full performance in specie, the title granted with the compensation or indemnity for the defect being the equivalent of a full specific performance.

The seller could not have compelled the purchaser to accept such defective title with indemnity for the incumbrance, but the latter had an option to accept it or rely upon his action for damages. He could have brought his action for specific performance at once, and taken judgment in such form as would have secured to him the full benefit of his contract, and the property for which he contracted. (*Harsha* v. *Reed*, 45 N. Y., 419; *Woodbury* v. *Luddy*, 14 Allen, 1; *Davis* v. *Parker*, id., 94; *Morss* v. *Elmendorf*, 11 Paige, 277; *Knowles* v. *McCamly*, 10 id., 342.) The title which

the buyer would have acquired by action, prosecuted at once, would have become perfect in time, and the same title that his successors in interest now seek to have ; and he would have been indemnified against the contingent claim of the wife of the seller for dower.

The law giving the purchaser an immediate action, it is no answer to the claim that the statute of limitations then commenced running ; that the form of the relief which he could then have had was not precisely the same as that now attainable.   The action, the cause of action, and the substance of the relief are in all respects the same, and the cause of action was as perfect, and the remedy, in substance, which could have been had was as complete, at the time of the refusal of the vendor to convey as it was on the death of his widow, fourteen years thereafter.   The statute commenced to run in May, 1852.

The only other question relates to the time prescribed by the statute for bringing the action; that is, whether it is within the twenty years' limitation of section 90, or the ten years' limitation of section 97 of the Code.

Stress is laid upon the fact that, by the Code, the distinction between actions at law and suits in equity, and the forms of such actions and suits, are abolished ; and the peculiar phraseology of certain sections of the Code, limiting the time for the commencement of different actions.

The change in phraseology referred to was adopted to conform the act, as far as practicable, to the new system of practice and procedure, and the theory and views of the framers of the instrument.

The change was made necessary as much by reason of the abolishing the names of the several actions as by the attempt to assimilate the forms of all actions, whether at law or in equity.   The terminology of the former statutes of limitations were not adapted to the new system, and the framers of the Code sought to make the statutes applicable to the new system, in which there was but one form or name of an action, to wit, " a civil action."   It was a work of some dif-

ficulty; and it is not strange that it should be the subject of criticism, and capable, by ingenious argument, of being made to have the appearance of working a change in the law as applied to individual actions. But there is an absence of evidence of any intent on the part of the legislature, or of the authors of the Code, to effect any change in the substantial rights of parties or to subvert the substantial distinction between equitable and legal causes of actions; distinctions which are inherent, and cannot be disregarded without seriously disturbing substantial rights. The legislature, in adopting this part of the Code, except as otherwise indicated, intended a simple revision, and not a change of the prior statutes; and the pre-existing statutes have not been changed, except by a change of phraseology, to conform them to the union of legal and equitable procedure; and the substance of the statutes is now the same as before the revision. (*Taylor* v. *Delany*, 2 C. C. on E., 151; *Goodell* v. *Jackson*, 20 J. R., 722; *Howard* v. *Thompson*, 21 W. R., 319; *Douglass* v. *Howland*, 24 id., 47; *Theriat* v. *Hart*, 2 Hill, 381.) Without entering upon a critical examination of the several provisions of the Code in detail, it is quite apparent, from the entire chapter limiting the time for commencing actions other than for the recovery of real property, that section 97 is a substitute for section 52 of the Revised Statutes. (1 R. S., 301.) Subdivision 2 of section 90 of the Code takes the place of section 48 of the Revised Statutes, making the lapse of time to operate as a bar to the action instead of a presumption of payment; and extending the provision to sealed instruments of all kinds instead of confining it to instruments for the payment of money. If section 90 applies to an action for equitable relief when the right grows out of a sealed instrument, then section 91, which makes six years the limit for actions upon a contract obligation or liability, express or implied, excepting those mentioned in section 90, would restrict the time for actions for specific performance of contracts other than those under seal to six years instead of ten, and there would be two distinct and

different limitations of time for bringing the same class of actions and for the same relief. Indeed, as all actions other than for tort or for the recovery of real property grow out or depend upon some contract, obligation or liability, express or implied, section 97 would, upon the interpretation now claimed for section 90, be of no force or effect.

While the framers of the Code abolished the distinction in actions and the forms of actions, they recognized the different classes of rights and causes of action, and the clear distinction between legal and equitable causes of action, and the different remedies, and did not assume to subvert the principles of the common law or of equity, and when an action for relief is spoken of in sections 91 and 97, reference is had to actions which before the Code were only cognizable in courts of equity. The commissioners of the Code in their report to the legislature expressly state that they make two important changes in the law by section 90 as proposed, and the only one made by subdivision 2 is by making the twenty years an absolute bar instead of a presumption of payment. It is true the section as reported was amended by the legislature by striking out "for the payment of money," so that it was made to include covenants and sealed agreements of all kinds; but section 77 was adopted as reported, and is now section 97 of the Code, and the commissioners in their note say that it is a substitute for the article of the Revised Statutes "Of the time of commencing suits in courts of equity" (1. R. S., 301), and provides for all the cases theretofore known as suits in equity, and that the periods of limitation were the same as those then existing, the only difference being that by the Revised Statutes they were applied to the form, while by the proposed section of the Code they were made to depend upon the substance of the remedy.

The legislature may be assumed to have concurred in the views of the commissioners, and not to have intended any change in the statutes limiting the time for commencing actions before then solely cognizable in equity, and the terms of the act certainly indicate no such intent. But this action

is in no just or legal sense an action upon a sealed instrument. An action for a breach of covenant is a legal action, depending upon well ascertained legal rights and sound in damages, and in it the plaintiff is entitled to and recovers, as a positive legal right, pecuniary compensation for the damages sustained by the breach of the covenant. This action is founded solely on the covenant, and, upon proof of a breach, the right of recovery is absolute.

An action for a specific performance is quite different in all that is essential, and is the same whether the contract is under seal or in writing, without seal or verbal, and does not depend and is not based solely upon the contract, but upon other circumstances in connection with the contract. No contract, no matter how solemnly made, alone gives an absolute and strict right to a specific performance, but if it is broken, a right of action at law for damages is absolute and fixed. If the party can be compensated for the loss of the benefit of his contract in damages, it is not of course to decree a specific performance. The jurisdiction of courts of equity to decree specific performance is not affected by the form or character of the instrument. (Story Eq. Jur., § 715.) The ground of the jurisdiction is that a court of law can only give the injured party compensation in damages, which may be far short of the redress to which in justice he is entitled. If the party therefore wants the thing in specie, and cannot be otherwise fully compensated, courts of equity will grant him a specific performance. (*Harnett* v. *Yielding*, 2 Sch. & Lef., 552.) Courts of equity proceed upon the ground that damages at law may not in the particular case afford a complete remedy. (*Adderly* v. *Dixon*, 1 S. & S., 607.) Sometimes a specific performance will be granted of a contract void and not capable of being enforced at law. (*Cannel* v. *Buckle*, 2 P. Wms., 244.) The exercise of this branch of equity jurisdiction is not a matter of right but of discretion, and specific performance is granted or refused according to the circumstances of each case irrespective of the character or form of the contract or the foundation of

the liability. (Story Eq. Jur., 742.) The contract gives the right of action; that is, without it no right of action would exist, but other circumstances enter into the question, whether the party is entitled to this particular relief.

This is not an action upon a sealed instrument within the true intent and meaning of section 90, and is within the letter as well as the spirit and intent of section 97 of the Code.

The case was properly disposed of in the court below, and the judgment must be affirmed.

All concur, except ALLEN, J., not voting.

Judgment affirmed.